## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| BRENDA M. FLETCHER, | * | Case No. 11-21424-MMH |
| Debtor. | * | Chapter 13 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| BRENDA M. FLETCHER, | * | |
| Plaintiff, | * | |
| vs. | * | Adversary Proceeding No.: 19-00218 |
| U.S. BANK, NATIONAL ASSOCIATION, *et al.* | * | |
| | * | |
| Defendants | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT'S MOTION TO PRECLUDE THE EXPERT REPORT AND TESTIMONY OF BERNARD JAY PATTERSON**

Defendants PHH Mortgage Corporation, Successor by Merger to Ocwen Loan Servicing LLC ("PHH MC") and U.S. Bank National Association, as Trustee for the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-2 ("U.S. Bank") (collectively "Defendants"), move to preclude Plaintiff from calling Bernard Jay Patterson as an expert witness to testify at trial or in any evidentiary hearing in this matter, and to preclude Plaintiff from utilizing or relying upon or referring to the report, affidavit, deposition or trial testimony of Bernard Jay Patterson for any purpose whatsoever in this litigation..  In support of the motion, Defendants contemporaneously submit a Memorandum of Law in Support of Defendants' Motion to Preclude the Expert Report and Testimony of Bernard Jay Patterson.

DATED: November 11, 2022                Respectfully submitted,

                                        _____/s/ Namrata Loomba_____
                                        Namrata Loomba, Bar #20053
                                        Blank Rome LLP
                                        1825 Eye Street NW Washington, D.C. 20006
                                        Tel: (202) 420-2566
                                        Fax: (202) 379-9209
                                        Email: NLoomba@BlankRome.com
                                        *Attorneys for Defendants*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

In re:                                      *

BRENDA M. FLETCHER,                         *      Case No. 11-21424-MMH
                                                   Chapter 13
            Debtor.                         *

*     *     *     *     *     *     *     *     *     *     *     *     *

BRENDA M. FLETCHER,                         *

            Plaintiff,                      *

      vs.                                   *      Adversary Proceeding No.: 19-00218

U.S. BANK, NATIONAL ASSOCIATION, *
*et al.*
                                            *
            Defendants.                     *
*     *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
## TO PRECLUDE AND EXCLUDE THE EXPERT REPORT AND TESTIMONY
## OF BERNARD JAY PATTERSON

Defendants PHH Mortgage Corporation ("PHH MC"), Successor by Merger to Ocwen

Loan Servicing LLC ("Ocwen") and U.S. Bank National Association, as Trustee for the Lehman

Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-2 ("U.S. Bank")

(collectively "Defendants"), submit this memorandum of law, along with the attached exhibits, in

support of their Motion to Preclude and Exclude the Expert Report and Testimony of Bernard Jay

Patterson ("Patterson"), and request that the Court preclude Plaintiff, Brenda M. Fletcher

("Plaintiff") from (i) calling Mr. Patterson as a witness at trial; or (ii) using Mr. Patterson's

deposition testimony and purported expert report for any purpose at trial, in motion practice[1] or for any other purpose in this litigation.  Defendants request this Order from the Court for numerous reasons, including because (1) Patterson does not qualify as an expert witness; (2) his "methodologies" are not peer reviewed or utilized by any other experts and amount to nothing more than reorganizing data on spreadsheets; and (3) he has testified untruthfully in the past.

## I.   <u>INTRODUCTION</u>

The issues in this case are very straightforward: (a) whether Ocwen—as the servicer of Plaintiff's mortgage loan—properly accounted for borrower's payments made during the pendency of her Chapter 13 bankruptcy case;[2] and (b) whether the principal balance of a subsequent loan modification agreement, entered into between Ocwen and Plaintiff, accurately reflects the balance of Plaintiff's loan account and takes into account all of Plaintiff's post-petition payments.  In short, Ocwen maintains that it accurately and correctly applied Plaintiff's pre-petition and post-petition payments, while Plaintiff was delinquent on her post-petition mortgage obligations, missing post-petition payments and totaling $41,819.56 at the end of her Chapter 13 bankruptcy case, and that the balance in the loan modification agreement entered into between Ocwen and Plaintiff accurately reflected the balance owed by Plaintiff.

In support of Plaintiff's Motion for Partial Summary Judgment, and presumably for trial, Plaintiff retained purported expert witness Bernard Patterson to challenge Ocwen's accounting of Plaintiff's loan.  Patterson issued an Affidavit that was submitted as an exhibit to Plaintiff's Motion for Partial Summary Judgment and subsequently issued an Expert Report expanding on the

---

[1] As more fully discussed below, Plaintiff has submitted an affidavit from Mr. Patterson in support of her Motion for Partial Summary Judgment.  Defendants request that the Court strike or exclude that affidavit from its consideration of Plaintiff's Motion for Partial Summary Judgment.

[2] Case No. 11-21424.

statements in the Affidavit.  The Expert Witness Report of Bernard Jay Patterson, CFE (the "Report," attached hereto as Exhibit A) incorrectly asserts: (1) the Notice of Final Cure is overstated by $16,596.36; and (2) the principal balance in the loan modification was off by $32,487.22. (*See* Report at ¶¶ 46, 53.)  To reach these conclusions, Patterson allegedly performed "a forensic accounting analysis and a forensic bankruptcy analysis of the loan servicing transactions" completed by the subject servicers.  The Report states that Patterson completed a reconstruction of the transactions from March 1, 2007 through June 1, 2019 by "using a 'transaction date' method which is different than Ocwen's usual reporting method of using an 'effective date' method.'"[3]

Defendants file this motion under Federal Rule of Evidence 702, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9017, and ask the Court to prohibit Plaintiff from calling Mr. Patterson as an expert witness at trial and using his Report or deposition testimony for any purpose.  His Report and testimony are inadmissible under Rule 702 because Patterson does not qualify as an expert, and his data and methods are unreliable.  Further, the Report is inaccurate, incomplete and fails to offer a conclusion—in other words, it serves no purpose because Patterson is not an expert and is unreliable.  He has skirted the line between truth and fiction in numerous courts across the country, and in doing so has shown a complete disregard for the important role of "expert."  As the gatekeeper of experts, it is imperative that this Court shut the gate on Patterson.  As shown in greater detail below, Patterson's testimony has been precluded in other cases, and at least one court has found his testimony to be of no weight.  The report and testimony of an unreliable non-expert will not assist the trier of fact.

---

[3] Importantly, and as shown in greater detail below, Patterson admitted that there is nothing wrong with "effective date" method.

## II.   <u>LEGAL STANDARD</u>

Expert testimony is admissible under Rule 702 only if it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  It is well-established that trial courts must function as "gatekeepers" with respect to the admission of expert evidence pursuant to Federal Rule of Evidence 702. *Id.* at 597. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principals and methods; and
>
> (d)   the expert has reliably applied the principals and methods to the facts of the case.

Fed. R. Evid. 702. The Court must be certain that "an expert whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

When considering whether expert testimony is reliable or should be excluded, a court considers whether a theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a high known or potential rate-of-error, whether there are standards controlling its operation; and (4) enjoys general acceptance within a relevant scientific community. *Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 480 (4th Cir. 2018) (quoting *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001)).  The inquiry is meant to be "flexible"

and the factors "helpful, not definitive." *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).   A court's analysis should focus "on the 'principles and methodology' employed by the expert, not on the conclusions reached," *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 594–95), and "whether the reasoning or methodology" is "scientifically valid" and "properly can be applied to the facts in issue," *Cooper*, 259 F.3d at 199 (quoting *Daubert*, 509 U.S. at 592–93).

When a witness claims to be an expert based upon experience, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee notes) [brackets in original].

The party offering the expert has the burden of proving each of these admissibility criteria by a preponderance of the evidence.  *See Daubert*, 509 U.S. at 592 n.10.  For the reasons detailed below, Plaintiff cannot sustain that burden here.

### III.     PATTERSON'S BACKGROUND AND OPINIONS

Patterson enrolled at the University of Arkansas in 1978 and majored in accounting for three years but dropped out before obtaining his degree.  (*See* Transcript of Deposition of Bernard J. Patterson, September 16, 2022 ("Patterson-Fletcher Dep."), attached hereto as Exhibit A at 10:5-19.)  Finally in 2014, more than 30 years later, he received a degree in accounting from the University of Arkansas. (*Id.* at 11:11-18.)  Patterson has never worked for an accounting firm and has never provided internal accounting services or audited financial statements. (*Id.* at 20:15-18; 22:13-19.) He is neither a certified public accountant ("CPA") nor a certified forensic account. (*Id.*

at 31:16-17; 18:4-21.)[4]

Further, Patterson has no direct experience in the mortgage servicing industry. (*Id.* at 22-23:20-1.) Before returning to the University of Arkansas to finish his degree, Patterson sold insurance. (*Id.* at 11-12:19-7.) His experience with mortgage accounting is solely derived from his time selling insurance—where he would "reconcile [] loans that needed forced-placed insurance." (*Id.* at 12:8-20.)  Patterson's purported experience in the mortgage industry is not related to the issue here—the actual accounting of the loan's payments.  He confirmed that all he did when he sold insurance was ensure that the proper insurance policies were in place for the respective account. (*Id.* at 27:7-11.)[5]

Although Patterson took prep courses for the Certified Fraud Examiner ("CFE") exam, none of those courses addressed any aspect of mortgage servicing. (*Id.* at 30-31:10-2.)  Patterson also admitted that he never has taken any professional education or related courses that deal with lending or mortgage servicing or bankruptcy accounting. (*Id.* at 31:5-15; 32-33:12-6.)  Alarmingly, and in yet another instance of Patterson's unreliable testimony, in his declaration in this case, Patterson tries to make it appear that he is a certified forensic accountant: "I am a Certified Fraud Examiner and Forensic Accountant."  As shown in footnote 5, *supra*, one cannot become a certified forensic accountant without first being a CPA. (*See* ECF No. 156 at Exhibit 10, ¶5.)

---

[4] Although not a CPA, Patterson claims he is a member of two CPA-related organizations.  At least one court has mistakenly believed Patterson to be a CPA. (*See* Transcript of Hearing in *Bank of New York v. Nicolas*, Case No. 2018-037059-CA-01 at 71–72 (Fla. Cir. Ct. Miami-Dade Cty. attached hereto as Exhibit B.)  To obtain a certificate as a Certified Forensic Accountant, one must hold a CPA license, which Patterson does not. *See* https://abfa.us/certifications-designations/crfac-certified-forensic-accountant-credentialing-program/. Patterson never corrected the court's mistake.

[5] "Q      That was essentially to reconcile what you saw—what you understood to be the policies that had been placed versus what their records showed policies had been placed?
A       That's a fair statement."

Patterson has not had any substantial exposure to Defendants' servicing platforms.[6]  He has no exposure to Ocwen's Real Servicing platform or PHH's current MSP platform. (*See* Patterson-Fletcher Dep. at 33:12-20.)  He has only limited training with these platforms. (Id. at 34-35:10-3.)  Importantly, he has never had "live access" to any servicing platforms. (*Id.* at 54:7-11.)

In 2007, Patterson formed Full Disclosure LLC, which according to him provides forensic accounting, auditing, and data analytics. (*Id.* at 14:7-15:11.)  Patterson's curriculum vitae claims that over the years he has created several methodologies for analyzing mortgage loan transactions. (*See* Patterson CV attached hereto as <u>Exhibit C</u>.)  As Patterson acknowledged, these methodologies have never been peer reviewed, have not been the subject of any scholarly articles, and, to his knowledge, are not used by any other accountant. (*See* Patterson-Fletcher Dep. at 48:7-49:9.)

## IV.   ARGUMENT

With no specialized training and lacking any actual experience in the mortgage industry, Patterson nevertheless purports to set forth a "corrected" accounting that, supposedly, demonstrates that Ocwen incorrectly applied Fletcher's monthly mortgage payments to her account.  Patterson, however, does not have the specialized training or the relevant experience to qualify as an expert with respect to bankruptcy accounting or mortgage servicing accounting.  His methodologies are innately unreliable because they have never been peer-reviewed.  Furthermore, his report is nothing more than a reproduction of the information already produced by Defendants and, thus, will not assist the trier of fact.

In addition to Patterson's flaws, his testimony also is irrelevant and unnecessary in this

---

[6] Servicing platforms are the engines that drive mortgage servicers.  These platforms are sophisticated software that assist in the daily management of mortgage loans.  Relevant here, they catalogue, calculate, and report a mortgagor's monthly payments, including escrow administration, and other credits and debits to the account.  During the servicing of Plaintiff's mortgage loan, Defendant Ocwen employed Real Servicing as its servicing platform and Defendant PHH uses Mortgage Servicing Platform (MSP®).

case.   The core dispute in Plaintiff's Third Amended Complaint ("Complaint") is whether Defendants induced Plaintiff into a loan modification and violated her discharge order by offering and placing her into a loan modification where she was concededly at least fourteen (14) months behind on her post-petition monthly mortgage payments.   Plaintiff also alleges that Defendants violated Bankruptcy Rule 3002.1 by failing to provide an itemized notice of assessment of the post-petition fees on her loan at the final cure stage, and allegedly violated the Real Estate Settlement Procedures Act ("RESPA") by improperly charging and failing to correct the escrow accounting on her loan.   When considered in light of the accounting issues in this case, *i.e.*, whether Plaintiff fulfilled her post-petition mortgage obligations and Defendants accurately and properly applied Plaintiff's payments, Patterson's declaration, Report, and testimony add no value to addressing the actual disputed issues.

The Court should exclude Patterson's opinions in their entirety—excluding his report from evidence and precluding him from testifying at trial.

## A.    Patterson's Experience Does Not Qualify Him to Testify as an Expert.

Patterson is not an expert.   He has very limited experience with respect to mortgage accounting and even less experience in accounting, generally.   This void experience, when coupled with Patterson's lack of a peer-reviewed and identifiable process, renders his testimony excludable under Rule 702.   Critically, all of Patterson's alleged experience derives from testifying in trials. Patterson's journey to becoming an allegedly experienced "expert" goes against the entire concept of expertise—he started acting as if he was an expert before actually becoming one—a true "what came first the chicken or the egg" scenario.   This backwards path is problematic, and the problem is only compounded by the fact that Patterson has no actual accounting experience.[7]

---

[7] *See Wehling v. Sandoz Pharms. Corp.*, 162 F.3d 1158 (4th Cir. 1998) ("Another significant fact weighing against admitting the testimony is where, as here, the expert developed his opinions expressly for the purposes of testifying");

Patterson is a "certified fraud examiner"—that is the only certification that he can claim. He has not participated in any course, lecture or class related to bankruptcy accounting. Plaintiff does not allege fraud but instead claims inaccurate accounting of her loan; thus, Patterson's certification is not relevant and will not assist the trier of fact in analyzing the issue before it. In the Fourth Circuit, an accounting expert is typically a certified public account. *See Balbed v. Eden Park Guest House, LLC*, 2019 U.S. Dist. LEXIS 132738, *7, 2019 WL 3717582 (D. Md. Aug. 7, 2019) ("certified public accountant with more than 20 years of accounting experience" with "numerous certification" and "experience overseeing an accounting firm's 'accounting, audit and business valuation practice.'"); *Hoang v. Rosen*, 2013 U.S. Dist. LEXIS 127759, *16, 2013 WL 4804822 (D. Md. Sept. 6, 2013) ("certified public account"); *Nichols v. Stone*, 2010 U.S. Dist. LEXIS 32162, *32, 2010 WL 1346422 (D. Md. March 31, 2010) ("Mr. O'Brien is also a Certified Public Accountant"); *Kay Co., LLC v. EQT Prod. Co.*, 2017 U.S. Dist. LEXIS 234399, *19 (N.D. WV Feb. 2, 2017) ("licensed certified public accountant, a certified valuation analyst and he is certified in financial forensics") [emphasis in all added]; *see also Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989) (proposed expert for credit and price discrimination case not qualified because she was not an economist, had published nothing about price discrimination, credit, or antitrust, worked primarily on analyzing companies' financial health, and had no personal experience making credit decisions); *Zellers v. NexTech Ne., LLC*, 533 F. App'x 192, 197 (4th Cir. 2013) (proposed expert seeking to testify to the cause of plaintiff's medical symptoms as

---

*see also LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (affirming district court's exclusion of expert testimony where "the methodology was not in regular usage for predicting future profits, was not peer reviewed, has no uniform usage in any known industry, and is capable of manipulation to achieve virtually any desired result"); *Comer v. Am. Elec. Power*, 63 F. Supp. 2d 927, 935 (N.D. Ind. 1999) (excluding expert testimony after noting the "breath-taking ease with which [the expert] . . . change[s] [his opinions] based on nothing more than the mere suggestion of counsel" so that his testimony "easily accommodates whatever theory . . . is needed by his client"); Fed. R. Evid. 702 advisory committee's note (2000 amendment) (court may consider whether expert developed opinion solely for purposes of testifying in determining whether opinion is reliable).

being exposure to toxic gas not qualified because she was a neurologist with no training in the field of toxicology and her knowledge of gas toxicity simply came from articles downloaded from the Internet).

"An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist." *See* Fed. R. Evid. 702 advisory notes; *see also Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seems exactly backwards that experts who purport to rely on general engineering principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique.").

Further, it appears that Patterson put the cart before the horse—holding himself out as an expert without actually holding the requisite training or experience.  Of the thirty-seven (37) speaking engagements listed on his curriculum vitae, at least twenty-seven (27) have been sponsored by Max Gardner, a plaintiffs' lawyer who runs a "boot camp" for other plaintiffs' lawyers on how to sue financial institutions "to increase revenues" (See Exhibit C at pgs. 3–4; *see also* Patterson-Fletcher Dep. at 59-62:18-18).[8] None of the three "papers" he lists ever have been published; he attempted to get his paper "Accounting Treatment of Mortgage Loans, It's All About Control" published, but it was rejected. (*Id*. at pg. 5; *see also* Patterson-Fletcher Dep. at 63-67:8-13.)

Under the test set forth in *Wilson*, Patterson is not an expert. *See Wilson*, 484 at 274. Patterson cannot show how his experience leads him to the ultimate conclusion that Plaintiff's bankruptcy accounting is incorrect.  Although Patterson has received an accounting degree, he has never performed accounting functions outside of his work as an expert, with zero experience as an

---

[8] See https://maxconsumerdefenseacademy.com/.

accountant and zero experience working in the mortgage servicing field.  Thus, his testimony and methods are inherently unreliable.[9]

**B.      Patterson's Worksheet is Not the Product of Reliable Accounting Principles and Methods; thus, it should be Excluded.**

Patterson's report is based upon his Mortgage Loan Reconstruction Analysis Worksheet ("MLA"), which in his words is "the reconstruction of the accounting and servicing transactions for this loan." (*See* Expert Report of Bernard Jay Patterson, CFE (the "Expert Report"), attached hereto as <u>Exhibit D</u> at pg. 4.)  This worksheet is nothing more—it is simply Patterson taking the information provided by the mortgage servicer and putting it into a more colorful format.  Patterson admitted that his MLA worksheet methodology has never been peer reviewed and has not been used by any other accountants or certified fraud examiners. *See* Patterson-Fletcher Dep. at 48:7-49:9; 52:9-19.  Likewise, his reports based on the MLA are never peer reviewed or reviewed by anyone other than the attorneys that requested the reports.  *Id.*, 129:1-5

Patterson admitted he has no knowledge of any standards that relate specifically to forensic accounting, auditing or data analytics. (*See* Patterson-Fletcher Dep. at 41:6-42:0); *see also O'Conner v. Commonwealth Edison Co*., 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on a completely subjective methodology held properly excluded).  Further, most of the information contained in the MLA is simply a regurgitation of the information provided by Defendants:  "[The MLA] is the reconstruction of the accounting and servicing transactions for this loan." (*See* Exhibit D at pg. 4.)  The only difference between the MLA and Defendants' records is that the MLA

---

[9] *See* American College of Trial Lawyers, Standards and Procedures for Determining the Admissibility of Expert Testimony after Daubert, 157 F.R.D. 571, 579 (1994) ("[W]hether the testimony concerns economic principles, accounting standards, property valuation or other non-scientific subjects, it should be evaluated by reference to the 'knowledge and experience' of that particular field.").

presents the information based upon a "transaction date," as opposed to an "effective date" method. But Patterson did not state that the "effective date" method is improper. (*See* Patterson-Fletcher Dep. at 101-102:15-1.)  Finally, the MLA (along with Patterson's report) does not identify or describe the methodologies that are being used by Patterson—this means it is impossible for the same to be tested, peer-reviewed or scrutinized.  Instead, in sum, Patterson admits there are no accounting standards related to his purported expert practice field and then admits that the methods used by Defendants are acceptable.  This shows there is no need for Patterson.

Importantly, Patterson's testimony will not aid the Court.  The Court is well-versed in bankruptcy accounting issues and is able to assess the mortgage payments on its own without aid from either party. *See Wells Fargo Bank, N.A. v. Jones*, 391 B.R. 577, 602 (E.D. La. 2008) (holding bankruptcy court did not act as an expert for debtor when conducting analysis of loan and payments).  As for whether the testimony will aid a jury, the issue in this case (*i.e.*, the borrower's transaction history) is not novel and typically offered into evidence through fact witnesses.  If this were an atypical case or involved complicated issues, then an expert would be beneficial. Cf. *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("We conclude that the specialized nature of the legal regimes involved in this case and the complex concepts involving . . . specific regulatory practices make it a typical case for allowing expert testimony that arguably states a legal conclusion in order to assist the jury."); *SEC v. Jacoby*, 2022 U.S. Dist. LEXIS 59968, *6, 2022 WL 982549 (D. Md. March 31, 2022) ("this litigation involves a complex financial and regulatory arena where opinions about accounting concepts applicable to companies such as Osiris and their executives will be helpful to the jury.").  Unlike most experts who explain a complex topic in simple terms, Patterson is doing the opposite—turning a simple concept on its heads. *See U.S. v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001) (allowing unreliable expert testimony may result in

confusing and/or misleading the jury, given the "aura of reliability" that juries attach to conclusions offered by experts). A jury is more likely to be misled by Patterson than it is to be aided.

Neither *Daubert* nor the Federal Rules of Evidence obligate a court "to admit opinion evidence that is [based merely on] the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997); *see also Donalds v. Ethicon, Inc.*, 2021 U.S. Dist. LEXIS 246609, 2021 WL 6126297, at *10 (D. Md. Dec. 28, 2021) ("As [the expert] offers no explanation of his methods, his opinion does not rise above the level of 'belief or speculation' and is ipse dixit.") (internal citations omitted). Rather, "[r]eliability is to be determined by the 'principles and methodology' employed by the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 179 (4th Cir. 2001). The MLA was created solely for the purpose of soliciting expert testimony employment for Patterson.[10] The failure to explain his process or methods renders the Report inadmissible under Rule 702. Not surprisingly, no other accountant uses the methodology. The MLA does not solve an accounting problem—it merely created an employment opportunity for Patterson.

## C.    Patterson's Report is both Misleading and Incomplete.

The means by which Patterson constructed his report is also flawed. For example, Patterson's testimony about whether his report disclosed all information upon which he based in report is contradictory, and his testimony differed from the statements in his report. Patterson initially claimed that all the information he relied upon was listed in his report and that he did not rely on anything else. (*See* Patterson-Fletcher Dep. at 84-85:15-2.) However, his subsequent testimony directly contradicted that earlier testimony. At Paragraph 20 of his report, Patterson claimed that Plaintiff should be given credit for a check in the amount of $2,471.00. In his

---

[10] Typically, one becomes an expert first and then later an expert witness.

deposition, even though Ocwen has provided proof that the check was not credited to Plaintiff's account because it was rejected and refunded to Plaintiff. When asked on what criteria he based his conclusion that the funds had not been returned to Plaintiff, he testified that his conclusion was based on information provided to him orally by Plaintiff's counsel, or based on Plaintiff's bank account information, even though neither were listed in his report and even though he did not review borrower's bank records. (*Id*. at 104-106:16-17.)

Then, with regard to the $8,933.22 trustee payment (which Patterson claims was not credited to Plaintiff's account as set forth in paragraph 21 of his report), Patterson testified that he did not review Defendants' supplemental production, which included Aurora's records regarding that very payment. (*Id*. at 110-112:8-10.)   While Patterson did not have the supplemental production when he initially drafted his report, his failure to amend the report based upon this new information highlights a deficiency in his work. *See* Fed. R. Civ. P. 26(e)(2) ("The duty to supplement an expert report extends both to information included in the report and to information given during the expert's deposition."); *see also S. States Rack And Fixture, Inc. v. Sherwin-Williams Co*., 318 F.3d 592, 595–96 (4th Cir. 2003) ("Rule 26(e)(1) requires a party to supplement its experts' reports and deposition testimony when the party learns of new information.  If the party fails to do so, the court may exclude any new opinion offered by the expert.").  In her motion for partial summary judgment, Plaintiff also apparently relies upon Patterson to buttress her unsustainable claim that the principal and interest balance of her loan modification was overstated. However, at deposition, Patterson admitted that he had not even come to a conclusion as to whether or not the alleged accounting issues, even if they had occurred, caused Plaintiff's loan modification balance to be overstated.  Rather, in response to the question of whether he "made an assessment of the extent of the impact" of the alleged accounting issues, he testified that "No, I have not," and

14

went on to state that the impacts "are potential—that could be potentially down—effect the loan modification downward." (*See* Patterson-Fletcher Dep. at 126:11-19.) Testimony by a purported expert that something is "potential" or "potentially" is speculative and amounts to mere conjecture—and clearly does not come close to satisfying the standard for admissible expert opinions. *See Samuel v. Ford Motor Co*., 112 F. Supp. 2d 460, 470 (D. Md. 2000) ("If the . . . expert testimony is speculation, or conjecture, it is not relevant.")

The Report as a whole, and Patterson's testimony consistent therewith, is unable to help the trier of fact because it is incomplete and misleading, and thus, should be excluded as evidence in all forms.

**D.      Patterson is Unreliable as a Witness because he has Offered False Testimony.**

Most disturbingly, Patterson has a history of offering false testimony regarding his qualifications. These transgressions, of course, undermine his reliability as an expert and should be disqualifying given his repeated conduct.

In July 2013, Judge Jacqueline Hogan Scola in Miami-Dade County, Florida struck Patterson's testimony. (*See* July 30, 2014 Order in *Bank of New York v. Marin*, Case No. 08-67540 CA 04(9) (Fla. Cir. Ct. Miami-Dade Cty.), attached hereto as Exhibit E.) (Court struck the testimony as irrelevant.) Despite this order, Patterson thereafter repeatedly denied that he had ever been excluded by a court. In *Wells Fargo Bank, N.A. v. Klasfeld*, Patterson testified:

Q. Have you previously testified in court?

A: Yes, I have, several times. This is probably I would say my 11th or 12th time to testify in court throughout the country.

Q: Have you ever been denied?

A: No, I have not . . . I would like to qualify that. Having been denied, I have had my testimony limited on a couple of occasions regarding different areas of mortgage loan accounting and very specific areas. But no, I have

15

never been denied in live testimony.

(*See* October 3, 2017, Trial Transcript from *Wells Fargo Bank, N.A. v. Klasfeld*, Case No. 50-2014-CA-012353 at 101–102 (Fla. Cir. Ct. Palm Beach Cty.) attached as <u>Exhibit F</u>.)  This was not an isolated mistake; Patterson has repeated the same false denial—under oath—multiple times over the last five years:

> • "No. I had . . . testimony that was thrown out because of untimeliness of an expert disclosure, I believe in Ohio. . . . I've also had a small part of my testimony limited in a case in the Southern District of Mississippi.  But other than that, no I have not been [excluded]."[11]
>
> • "Q: Those are the only two . . . instances that you have ever not had your Testimony—that you've been qualified as an expert?
>
> A. Yes."[12]
>
> • "Q: A court has never disqualified you as being an expert in a case?
>
> A: That's correct.  Yes."[13]

His *Saccameno* testimony is significantly troubling, as the Northern District of Illinois expressly relied on that representation when qualifying Patterson as an expert. *See Saccameno v. Ocwen Loan Servicing, LLC*, 2018 WL 10609657, at *1 (N.D. Ill. Mar. 21, 2018) ("During his deposition, Patterson additionally testified that he has never been disqualified as an expert. Dep. 45:19-21").

At his deposition in this case, Patterson acknowledged that his testimony has been limited in two cases, which are noted in his curriculum vitae. (*See* Patterson CV, Ex. C at footnote on p.

---

[11] See May 10, 2021 hearing in *Bank of New York v. Nicolas*, Case No. 2018-037059-CA-1 at 67–68 (Fla. Cir. Ct. Miami-Dade Cty.), attached as <u>Exhibit G</u>.

[12] See August 5, 2019 hearing in *Trevino v. U.S. Bank Trust N.A.*, No. 13-cbk-7031 (Bankr. S.D. Tex.) at 100–101, excerpts attached as <u>Exhibit H</u>.

[13] *See* March 8, 2017 deposition in *Saccameno v. Ocwen Loan Servicing,* LLC, No. 15-c-1164, at 45 (N.D. Ill.), excerpts attached as <u>Exhibit I</u>.

23; Patterson-Fletcher Dep., at 69:9-12.)   In the first case, *Fifth Third Bank v. Hunter*, CCP-Cuyahoga County, Ohio, No. CV-14-834511, Patterson's testimony regarding mortgage servicing accounting, including the application of payments, was stricken on post-trial motions. (Patterson CV, Ex. C, *supra*; Patterson-Fletcher Dep. at 69:21-70:5.)  In the second matter, *Bank of New York v. Marin,* 11th Jud. Cir., Florida, Case No. 08-67540CA04659, the court determined that Patterson's testimony would not be relevant regarding the custody of mortgage loan documents. (*Id*. at 71:5-72:1)[14]

Regarding *Marin*, Patterson claims he did not know that he had been listed as an expert witness and did not learn that he was precluded from testifying until long after the fact (*Id*. at 72:2-16).  Even more troubling is that, despite over a year passing since he claims to have learned in August 2021 about the *Marin* decision, and the consequent reality that he had given false and/or inaccurate testimony in prior cases, he cavalierly testified that while he hired an attorney as a result of the issue, he ***is not aware if anything*** being done to correct the records. (*Id*. at 73:5-74:9.) Patterson ***did*** admit that he withdrew as an expert witness in the *Ryan* case because of the *Marin* issue.[15] (Id. at 74:10-19.)

Finally, in a very recent matter, where Patterson's reliability was called into question, the Court concluded that his testimony was of no weight. *See* August 3, 2022 opinion in *Zinetti v. Deutsche Bank National Trust Company et al*., No. 19-cv-1279-WCB (D. Del.) attached as Exhibit K. The Court's decision in *Zinetti* is analogous to this case.  As referenced in Section IV.C above, Patterson claims that the Plaintiff should be given credit for a check in the amount of $2,471.00,

---

[14] Patterson also testified that "it is possible" that his testimony was deemed to be of no weight in other cases as well.

[15] *See* October 25, 2021 order in *HSBC Bank USA National Association as Trustee v. Kathleen A. Ryan et al*., Case No. 50-2018-CA-013901 in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida attached as Exhibit J.

even though Ocwen has produced evidence that the funds were returned to Plaintiff.  The Court in

*Zinette* expressly rejected Patterson's testimony and gave it no weight on very similar grounds,

stating:

> His [Patterson's] report and conclusions, however, are based on the flawed premise that the Zinettis received credit for the payments they submitted in July and August 2011, despite the fact that those payments were returned to them.  His ultimate opinion therefore assumed that the Zinettis paid $1,870.44 more than they actually paid during the time period he analyzed, and that assumption impacted all calculations relating to dates later than August 2011.  Mr. Patterson's opinions regarding errors committed by Ocwen in calculating the escrow amount due each month are therefore entitled to no weight."—granting summary judgment and denying motion to exclude testimony of Patterson as moot). [internal citations omitted and emphasis added].

Similarly, his testimony should be precluded here.

Ultimately, Patterson's issues of candor, in addition to all of the other flaws in his expertise

and methodology, further amplify why he should be precluded and excluded.

## V.    <u>CONCLUSION</u>

A "court must exclude expert testimony if it is so fundamentally unreliable that it can offer

no assistance to the jury." *Meterlogic, Inc. v. KLT, Inc*., 368 F.3d 1017, 1019 (8th Cir. 2004).

Patterson's testimony is inherently unreliable because he has no actual expertise, proffers a

spreadsheet that's simply a color-coded version of Defendants' account history, and even with

that, has submitted an unreliable report that misstates information and is, by his own admission,

incomplete.  Moreover, Patterson's testimony is unreliable because he has previously misled courts

regarding his history as an expert witness.  In other words, he will do more harm than good while

offering testimony on an issue for which no expert is needed.  For these reasons his testimony, in

all forms, should be excluded.

WHEREFORE, Defendants Deutsche Bank National Trust Company, as Trustee for Saxon

Asset Securities Trust 2007-3, Mortgage Loan Asset Backed Certificates, Series 2007-3 and Ocwen Loan Servicing, LLC request that the Court grant their Motion to Preclude the Expert Report and Testimony of Bernard Jay Patterson, and preclude Plaintiffs from making any use of, or reference to, Patterson's report or deposition testimony.

DATED:  November 11, 2022            Respectfully submitted,

_____/s/ Namrata Loomba_____
Namrata Loomba, Bar #20053
Blank Rome LLP
1825 Eye Street NW Washington, D.C. 20006
Tel:  (202) 420-2566
Fax: (202) 379-9209
Email:  NLoomba@BlankRome.com
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 11, 2022, a copy of the foregoing was electronically served via email and mail, postage prepaid to:

Wendell Finner
Wendell Finner PC
P.O. Box 449
Oakland, MD  21550
Tel:  (410) 929-2440
himself@wendellfinner.com
*Attorney for Plaintiff*

<u>*/s/ Namrata Loomba*</u>
Namrata Loomba