IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

In re:

Brenda M. Fletcher                                    CASE NO.:     1:11-bk-21424

Debtor                                                Chapter 13

_____
Brenda M. Fletcher

Plaintiff
                                                      Adversary Proceeding No.:
vs.

U.S. Bank, National Association,                      19-ap-00218
Ocwen Loan Servicing, LLC

Defendants
       *     *     *     *     *     *     *     *     *     *     *     *

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE THE EXPERT REPORT AND
TESTIMONY OF BERNARD JAY PATTERSON

Plaintiff, Brenda M. Fletcher, submits this opposition to Defendants' Motion to Preclude the Expert Report and Testimony of Bernard Jay Patterson [Doc. 187]. In lieu of a meaningful analysis of Mr. Patterson's credentials or methods, Defendants' motion expresses their disagreement with the substance of Mr. Patterson's findings, combined with an unsupported accusation of perjury. Mr. Patterson's methodical analysis of the various mortgage servicing records at issue in this case is supported, reliable, and will assist the Court in determining the status of Ms. Fletcher's mortgage account. The Motion should be denied.

1

**Background**

Ms. Fletcher in this case alleges that Defendants' improperly collected mortgage payments which were discharged in her bankruptcy, failed to manage Ms. Fletcher's escrow account as required by law, and modified her loan to require her to pay discharged debt. Defendants have produced hundreds of pages of loan history and other servicing documents from the records of Ocwen and of Aurora Loan Servicing, the prior servicer. These reports are inconsistent with one another and presented in scattershot fashion. See representative mortgage reports, attached as composite Exhibit A.

Multiple regulators with oversight of Ocwen have concluded that Ocwen's own systems are incapable of accurately maintaining borrower account information or properly applying payments. For instance, in 2013 Ocwen entered into a "Multi-State Settlement Agreement and Consent Order" with State Mortgage Regulators, including Maryland. The Maryland Consent Order, incorporating the Multi-State Order, is attached as Exhibit B. This resulted from a "Multi-State Examination" of Ocwen covering December 1, 2010 to October 24, 2011. The findings of this examination specify a lack of controls related to general borrower account information that includes, *inter alia,* (1) misapplication of borrower payments; (2) inaccurate escrow accounting and statements; (3) assessment of unauthorized fees and charges, and (4) deficiencies in management control and supervision necessary to ensure compliance with applicable laws and regulations. The deficiencies render Ocwen's records, standing on their own, unreliable as evidence that can be used to determine the true status of Ms. Fletcher's mortgage account.

Ms. Fletcher identified Mr. Patterson as an expert witness, and served his report upon Defendants on August 15, 2022. Mr. Patterson's complete curriculum vitae, including two exhibits, is attached hereto as Exhibit C. Defendants filed a partial copy of this CV as an exhibit to their motion, but omitted the CV's exhibits. Patterson's expert report and supplemental report are attached as composite Exhibit D.[1] Mr. Patterson conducted a forensic analysis of Ms. Fletcher's loan and created an analytic reconstruction ("Mortgage Loan Analysis") from the loan's 2006 inception through 2020. [Exhibit D, pp.13-37]

Following service of the report, Defendants produced additional records, including a new Aurora history. Mr. Patterson addresses these records in his supplemental report. Defendants have not identified an expert witness, nor did they meet and confer prior to filing the Motion.

### Mr. Patterson's Expert Testimony Should be Admitted

Pursuant to Fed. R. Evid. 702, the testimony of an expert which will be helpful to the court is admissible if it is founded in data, and both reliable and methodical:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Mr. Patterson's specialized knowledge regarding mortgage loan accounting is manifest. He has practiced as a forensic accountant since 2007 and as a certified fraud examiner since November 2009. His practice is limited to forensic and investigative accounting, auditing and data analytics specific to the mortgage loan servicing, structured finance and document forensic

---

[1] Defendants filed selected portions of Mr. Patterson's report in connection with the Motion, but omitted significant

3

areas. He has testified as an expert in these areas in state and federal courts and before legislative bodies. He holds a Bachelor of Science in accounting from the University of Arkansas. He is a member of the Association of Certified Fraud Examiners. See Exhibit C. He has been specifically trained in the RealServicing system used by Ocwen. Patterson deposition at 34. Contrary to Defendants' assertion, one of his three paper was published, on the San Francisco assessor's website. Patterson deposition at 63. Nor does Patterson hold himself out as a Certified Forensic Examiner. Patterson deposition at 19.

Mortgage loan accounting is a unique industry whose systems produce records and data which are neither self-explanatory nor transparent. Mr. Patterson has over fourteen years' experience working with and interpreting mortgage servicing records. He described in his deposition his procedures and methodologies. Mr. Patterson describes the primary methodology of a forensic accountant as the transactional gathering of data, reconstructing that data and transforming it into a format that is presentable to a court in an understandable format. Patterson deposition at 37. Mr. Patterson further describes the specific methods he has developed specific to mortgage loan servicing, including the generally-accepted accounting principle of duality and the "but for" method used in forensic accounting. Patterson deposition at 39-47.

Defendants do not meaningfully dispute that Mr. Patterson's analysis will be helpful to the trier of fact. The records of Ms. Fletcher's loan encompass more than one thousand individual accounting entries and comments. Mr. Patterson has reconstructed the loan history transaction by transaction, and has made his work available as a schedule to his report. Defendants suggest that the Court can conduct this analysis, yet do not propose to add time to the one day scheduled for trial for this purpose.

---

portions, including the Affidavit of Bruce Jacobs, Esquire contained in an exhibit to Mr. Patterson's CV.

Defendants do not identify a single omission or erroneous calculation which would show Mr. Patterson's work to be unreliable.  Rather, they dispute his interpretation of two transactions: (a) Ms. Fletcher's June 10, 2011 in the amount of $2471.00 and (b) the Trustee's March 30, 2012 payment in the amount of $8,993.22.

Mr. Patterson found that the $2,471.00 payment had not been credited to Ms. Fletcher's account.  Contrary to Defendants' assertion that they "provided proof … that the check was rejected and returned," Mr. Patterson concluded that the document offered by Defendants lacked corroboration in the servicing records:

> 20.    **Payment #1:  $2,471.00 on 06/10/2011.**  I found one (1) payment made by the Debtor payable to Aurora in the amount of $2,471.00 on 06/10/2011.  **(Exhibit #12)** This payment is unaccounted for.  This payment cleared Debtor's bank account on 06/14/2011 however is not found in any system generated payment history. Counsel provided an Aurora document titled "Check Request" dated 06/21/2011 for $2,471.00 (PHH01990) (Exhibit #12) however there is no corresponding entry of this payment or check in Aurora's payment history.  I would also look to Aurora's servicing notes for corroboration however these notes were not produced.

*Image 1:  Excerpt from Expert Witness Report*

Mr. Patterson initially reported that the $8,993.22 payment was not credited in the Aurora or Ocwen payment histories:

> 21.    **Payment #2:   $8,993.22 on 03/30/2012 by Chapter 13 Trustee:**  According to the Chapter 13 Disbursement Ledger (Exhibit #11) check no: 0881764 in the amount of $8,993.22 was paid to Aurora Bank on 03/30/2012.  I did not find this payment credited to the Aurora system payment history or the Ocwen system payment history and remains unaccounted for.

*Image 2:  Excerpt from Expert Witness Report*

After receiving the expert report, Defendants produced additional records on August 30, 2022 which showed this payment credited by Aurora to *a different loan account.*  Mr. Patterson's supplemental report describes this transaction:

3. Paragraph 21 of my initial expert report concerns a Chapter 13 Trustee check No. 0881764 in the amount of $8,993.22 which was paid to Aurora Bank on 03/30/2012. In my initial report I asserted that I did not find this payment credited to the Aurora system payment history or the Ocwen system payment history and remains unaccounted for. Furthermore, paragraphs 24-32 of my initial report concern Aurora's Bankruptcy adjusting entries as well as Ocwen's boarding entries. These paragraphs discuss Aurora moving some pre-petition arrearage amounts off of the loan. I further discussed that Ocwen onboarded these entries.

4. The additional Ocwen document production changes my analysis provided in paragraph 21 concerning the Trustee check for $8,993.22. This additional document also provides some clarity and further analysis to my previous discussion in paragraphs 24-32 which I will detail below.

5. Ocwen provided a "Borrower Loan Transcript" (PHH2508-2012)(Exhibit #1). This data purports to show some pre-petition arrearage amounts were transferred from the original loan #7121016096 (Aurora Loan #1) and into a separate loan #612-7-009097-1516BK (Aurora Loan #2) totaling $69,761.54.

6. Aurora Loan #1 was brought current meaning the delinquent due dates were adjusted. (**PHH00003-excerpt attached as Exhibit #2**)

7. The Chapter 13 Trustee check in the amount of $8,993.22 was applied to Aurora Loan #2 leaving a total balance of $60,768.32 (69,761.54 less 8,993.22) (See Exhibit #1)

8. Aurora Loan #2 transferred out the remaining balance ($60,768.32) purportedly to Ocwen. This balance included allocations of $5,450.97 to principal, $33,081.99 to interest, $19,761.21 to escrow, and $2,474.15 to late charges.(See Exhibit #1)

9. Ocwen boarded to Loan #1 $66,218.77. This was $5,450.45 greater than the amount transferred from Aurora Loan #2. Ocwen allocated this amount to $9,984.08 to principal[1], $30,331.91 to interest, $23,428.63 to escrow, and $2,474.15 to late charges. (The Ocwen Boarding entries) Ocwen did not re-adjust the previous delinquent due dates that were removed previously. (**PHH1941-Exhibit #3**)

---

[1] Ocwen boarded two (2) entries to principal. The first entry was 6,379.27 which shows as the beginning principal balance and another entry of $3,604.81 for a total boarding addition to principal of $9,984.08. The ending principal balance from Aurora Loan #1 of 181,042.55 was also boarded.

*Image 3: Excerpt from Supplemental Expert Witness report*

Since they cannot contravene with admissible evidence the particulars of Mr. Patterson's method, Defendants attack his experience, focusing on the fact that Mr. Patterson "has no experience in the mortgage servicing industry." The United States District Court for the Northern District of Illinois has rejected this attack, finding Mr. Patterson's experience has given him specialized knowledge sufficient to testify about mortgage servicing:

Defendants first argue that Patterson lacks the knowledge necessary to offer expert opinions in the specific areas for which his testimony is proposed. They assert that Patterson has "no personal knowledge working in ... REALServicing." Defs.' Br. at 6. Defendants also argue that Patterson is not qualified to offer expert testimony because he has never worked for a mortgage company, loan servicer, bank, or accounting firm, and because he has no formal training in bankruptcy law.

The court disagrees. Patterson holds an accounting degree and is the owner of Full Disclosure, LLC, a company that provides "forensic and investigative accounting/auditing relating to[, among other things,] mortgage loan servicing functions." Bernard Jay Patterson, Curriculum Vitae, ECF No. 140-1. He has practiced as a forensic accountant since 2007 and has been certified as a fraud examiner since 2009. *Id.* He has been qualified as an expert in several federal cases, including several matters involving loan-servicing practices. *See, e.g., Neel v. Fannie Mae*, No. 1:12CV311-HSO-RHW, 2014 WL 1117247, at *3 (S.D. Miss. Mar. 20, 2014) ("The Court is of the opinion that Mr. Patterson's background, training, and experience in forensic accounting pertaining to the area of mortgage loan servicing provides sufficient specialized knowledge to qualify him to offer testimony consistent with the Report related to the accounting analysis he has performed in this case."); *see also Ishee v. Fed. Nat. Mortg. Ass'n*, No. 2:13-CV-234-KS-MTP, 2015 WL 224800, at *6 (S.D. Miss. Jan. 15, 2015). An exhibit attached to Patterson's curriculum vitae lists numerous other cases in which he has served as an expert, at least ten of which are other federal cases involving loan-servicing issues. During his deposition, Patterson additionally testified that he has never been disqualified as an expert. Dep. 45:19-21.

Moreover, despite defendants' claim to the contrary, Patterson has experience working with Ocwen's REALServicing platform. Defendants point to Patterson's acknowledgment during his deposition that he did not "have any personal knowledge working in any capacity with regard to actually how [the REALServicing system] work[s]." Patterson Dep. at 36:19-21. Patterson subsequently clarified, however, that this meant only that he had never "sat down at a [computer] terminal" running the REALServicing platform. He testified that he possesses "expertise in how [the servicing platforms] work and what their output is." *Id.* at 36:22-26; *see also id.* at 40:9-20 ("With regard to operating systems, do you have any personal knowledge as to how REALServicing works? A. I have personal knowledge as to what their system output is and what format it's in and how to interpret that. Q. But you've never sat down in front of a computer -- A. I've never sat down at a terminal, no. I've never sat down at a terminal, but I'll be happy to if someone would let me. Q. That's fair.").

The court also assigns little importance to the fact that Patterson has never worked for a mortgage company, loan servicer, bank, or accounting firm, and that he has no formal training in bankruptcy law. By its plain terms, Rule 702 makes clear that expertise may be gained in a variety of ways—"by knowledge, skill, experience, training, or education." Qualification as an expert does not require any particular kind of employment. When questioned during his deposition, Patterson showed a firm understanding of bankruptcy procedure as it relates to this case.

In short, the court concludes that Patterson's education, training, and experience qualify him to testify as an expert regarding Ocwen's servicing of Saccameno's loan.

*Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2018 WL 10609657, at *1–2 (N.D. Ill. Mar. 21, 2018).

In an apparent attempt to mislead the Court while accusing Mr. Patterson of perjury, Defendants omit from their filed version of Mr. Patterson's' curriculum vitae Exhibit B thereto, which describes how Mr. Patterson was excluded from a case he hadn't worked on:

> 7. In each foreclosure case set for trial, my firm filed essentially a form expert witness list that always listed Mr. Patterson as "a certified fraud examiner" who would "opine that Plaintiff's evidence seeks to perpetrate a fraud upon the Court…."
>
> 8. I did not always try to present Mr. Patterson or Ms. Cully as experts at the trial, but I wanted the option left open if I needed them to testify.
>
> 9. It was not my practice to advise Mr. Patterson I had listed him in any particular case. I believed there would come a time, like with Judge Butchko, that Mr. Patterson would testify about systemic fraud on the court by Bank of New York Mellon and Bank of America.
>
> 10. On July 30, 2014, the Honorable Judge Jacqueline Hogan Scola conducted a pre-trial hearing and entered the order granting an *ore tenus* motion to strike Mr. Patterson as an expert witness. Bank of New York Mellon never filed a formal motion and never took Mr. Patterson's deposition before seeking to strike him as an expert.
>
> 11. To my dismay, Judge Hogan Scola ruled Mr. Patterson's testimony was irrelevant to the foreclosure and refused to hear any evidence Plaintiff "perpetrated a fraud on the court."
>
> 12. At that time, Mr. Patterson had not filed any report, resume, or any response to the *ore tenus* motion to strike his testimony. In fact, Mr. Patterson had no knowledge that the motion to strike was ever presented or ruled upon. The Court had taken no testimony and heard no evidence before ruling fraud on the court was not relevant to the foreclosure.
>
> 13. I never provided Mr. Patterson a copy of the Judge Hogan Scola's order. I never believed there was any reason to advise him of Judge Hogan Scola's order dated July 30, 2014, which provided, in part, that the "witnesses, Cully and Patterson, both have irrelevant expertise and shall not testify in this trial and are stricken."
>
> 14. I never contacted Mr. Patterson about the order that struck him as an expert finding his opinion about fraud upon the court was irrelevant to any issues in the foreclosure. Mr. Patterson testified before Judge Butchko about the fraud on the court that led to the criminal contempt proceedings against Bank of America, Bank of New York Mellon and its counsel, and was never asked about the *Marin* order. Mr. Patterson would have had no knowledge about the order if asked.

*Image 4: Excerpt from affidavit of Bruce Jacobs, Esquire.*

Defendants attempt to imply that Mr. Patterson has accepted the Marin order without objection. This could not be further from the truth. Mr. Patterson has obtained his own counsel and filed a motion with the Marin Court to set aside that Order. After that motion was filed BlankRome, who represents the Defendants in this case, entered an appearance in the Marin

case. A hearing is scheduled on Mr. Patterson's motion in early 2023. Declaration of Bernard Jay Patterson, attached hereto as Exhibit E. BlankRome's attempt to smear Mr. Patterson in its motion is striking, given the direct knowledge the firm has from its participation in the Marin case of Mr. Patterson's efforts to remedy the disqualification order.

Defendants' proposal that the Court exclude Mr. Patterson's testimony on the basis that he is not credible, without hearing the witness' testimony or being fully-apprised of the facts needed to determine credibility, should be rejected. "[T]he finder of fact determines the credibility of expert witnesses and the weight to be accorded their testimony." *United States v. Griley*, 814 F.2d 967, 975 (4th Cir. 1987). The *Zinetti* case cited by Defendants is notable. In that case, Mr. Patterson's conclusions were considered in summary judgment proceedings, and given no weight in the face of evidence which contradicted his assumptions. *Zinetti v. Deutsche Bank Nat'l Tr. Co.*, No. CV 19-1279-WCB, 2022 WL 3081446, at *5 (D. Del. Aug. 3, 2022). Ocwen's motion to exclude Mr. Patterson's testimony was denied by the *Zinetti* court as moot. *Id.* at *10. Similarly, this Court should accept Mr. Patterson's testimony based on its methodical reliability, subject to Defendants' right to introduce admissible evidence which contradicts Mr. Patterson's conclusions.

WHEREFORE, for the reasons stated above, Ms. Fletcher requests that the Court

(a) Deny Defendants' Motion; and

(b) Grant such other and further relief as is just.

/s/ Wendell Finner
Wendell Finner, Fed. Bar. No. 04379
Wendell Finner PC
PO Box 246
Oakland, MD 21550
(410) 929-2440
himself@wendellfinner.com

CERTIFICATE OF SERVICE

      I hereby certify that the foregoing was sent electronically by the ECF system this 30th day of November, 2022, to Francis Crowley, Esquire and Namrata Loomba, Esquire, attorneys for Defendants.

/s Wendell Finner