Entered: January 26th, 2023
Signed: January 26th, 2023
**SO ORDERED**



MICHELLE M. HARNER
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Brenda M. Fletcher, | * | Case No. 11-21424-MMH |
| | * | |
| Debtor. | * | Chapter 13 |
| | * | |
| * * * * * * | * | * * * * * * |
| | * | |
| Brenda M. Fletcher, | * | |
| | * | |
| Plaintiff, | * | Adv. Pro. No. 19-00218-MMH |
| v. | * | |
| | * | |
| U.S. Bank, N.A., et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |
| * * * * * * * | * | * * * * * * |

**ORDER DENYING MOTION TO PRECLUDE EXPERT REPORT AND TESTIMONY**

The matter before the Court is the Motion to Preclude the Expert Report and Testimony of Bernard Jay Patterson (the "Expert Motion"), filed by PHH Mortgage Corporation ("PHH MC"), Successor by Merger to Ocwen Loan Servicing LLC ("Ocwen") and U.S. Bank National Association, as Trustee for the Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, 2007-2 ("U.S. Bank") (collectively "Defendants"). ECF 187. Ms. Brenda M. Fletcher, the above-captioned debtor and plaintiff in this adversary proceeding (the "Plaintiff"),

1

filed a response to the Expert Motion, and the parties each filed supplemental papers relating thereto. ECF 194, 202, 205, 208. The Court held a hearing on this and other matters pending in this adversary proceeding on December 15, 2022 (the "Hearing"). For the reasons set forth below, the Court will deny the relief requested by the Expert Motion.

The parties contest the ability of Bernard Jay Patterson to testify as an expert in this adversary proceeding. The Plaintiff has identified Mr. Patterson as an expert on issues relating to mortgage servicing records and accounting. The Defendants argue that Mr. Patterson is not qualified to serve as an expert on these matters and that his methodologies are unreliable. Federal Rule of Evidence 702, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9017, governs expert testimony and provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under Evidence Rule 702, an individual may qualify as an expert based on his or her "knowledge, skill, experience, training or education." This list of factors is stated in the disjunctive, and any one factor can serve as the basis for qualification. *See, e.g., Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). Here, Mr. Patterson holds a Bachelor of Science degree in Accounting from the University of Arkansas at Little Rock, and he is a Certified Fraud Examiner and a member of the Association of Certified Fraud Examiners. ECF 194, Ex. C. Industry experience is not a prerequisite to serve as an expert;[1] nevertheless, Mr. Patterson is trained on the RealServicing system

---

[1] The Court agrees with the general conclusion on this point reached by the court in *Litten v. Quicken Loans, Inc.*,

used by Ocwen. ECF 194, p. 4. Moreover, he has worked in this space—specifically, interpreting mortgage servicing records—for the past 14 years. ECF 194, p. 4, Ex. C.

The Defendants also argue that Mr. Patterson's methodologies are unreliable and untested. Mr. Patterson developed what he calls a "Mortgage Loan Analysis" or "MLA" to evaluate mortgage servicing records. The MLA is based on the servicer's own records. As Mr. Patterson explains,

> The MLA uses the same mathematical functions and logic as the servicer systems use i.e. it shows transaction amounts and those transaction amounts are allocated to the respective and various separate accounts. Each allocation/applied account has a running balance that is either added to or subtracted from after each transaction. The addition or subtraction functions relate to whether funds are being added to the account or removed from the account. In order to effectively analyze the accounting for a loan, it is essential to track each transaction and how it affects the corresponding balances and to then present it in an understandable format.

ECF 205, ¶ 10. In essence, the MLA reconstructs the mortgage servicing records. Mr. Patterson then uses a "but for" analysis to evaluate the transactions and draw his conclusions.

The Defendants challenge the creation and reliability of the MLA and the "but for" analysis, arguing that it is impossible to document Mr. Patterson's assumptions or how he is performing his analysis.[2] In a post-Hearing supplemental affidavit, Mr. Patterson provided

---

Based on his education and experience, it is a fairly straightforward conclusion that White possesses the requisite knowledge for his proffered opinions, and that his specialized knowledge will help the jury to understand the factual issues in this case. Nevertheless, Quicken suggests that industry experience is a dispositive factor with regard to an expert's qualifications. That argument is incorrect, not only because it completely discounts the other four types of expertise, but also because White's "lack of direct experience is not a sufficient basis to reject [his] testimony." *Martin v. Fleissner GmbH*, 741 F.2d 61, 64 (4th Cir. 1984). Rather, a lack of experience goes to "the weight that testimony is given, a decision properly made by the jury." *Id.*

No. 1:13CV192, 2014 WL 12844181, at *2 (N.D.W. Va. July 7, 2014).

[2] As the United States Fourth Circuit has explained,

In evaluating reliability, courts typically assess five factors:
(1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

*United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593–94).

additional information concerning this "but for" analysis. He posits that he derives this methodology from accepted forensic accounting practices and that all assumptions are based on transaction documents and the servicer's records.[3] For example, Mr. Patterson explains,

> Integrated into my analyses in this case and all Bankruptcy cases I work is a framework for segregating transactions and funds paid into pre and post petition sections. The framework includes analyses of transactions and comparative reporting based on amounts "Paid", "Due", and "Applied". Amounts "Paid" are reconciled by actual amounts paid by the Debtor and/or Trustee but for the amounts shown as paid in the servicing transactions. The amounts "Due" are reconciled from the filings (Proof of Claim, Notice of Payment Changes, 3002.1 Notices) but for the amounts "applied" by the servicer. The differences/variances are then reported in a comparative presentation. This framework is discussed in my deposition although briefly as I was not asked to provide specifics. (Patterson Deposition 55:14-21; 56:1-3).

ECF 205, ¶ 18.

Based on the entirety of the record at this stage of the litigation, the Court finds that Mr. Patterson is qualified to serve as an expert and that his methodologies are sufficiently documented and reliable to withstand the Defendants' challenge in the Expert Motion.[4] Likewise, the Court finds that Mr. Patterson's testimony may assist the Court in resolving the parties' dispute. Mr. Patterson's testimony at trial remains subject to any applicable evidentiary objections not addressed by this Order and to cross-examination and any other means available to parties in the prosecution or defense of their respective positions in the ordinary course of litigation.[5] Indeed,

---

[3] From the Court's perspective, understanding that Mr. Patterson invokes the "but for" analysis methodology generally used in forensic accounting and that this analysis is performed on data obtained from the transaction records sufficiently demonstrates its reliability at this stage of the litigation. This is not to suggest that the Court agrees with the methodology or conclusions, but to observe that the data and methodology are ascertainable and may be subject to scrutiny by the Court and the Defendants.

[4] The Court is mindful of the Defendants' arguments concerning issues raised regarding Mr. Patterson in other cases, including *Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2018 WL 10609657 (N.D. Ill. Mar. 21, 2018); *Zinetti v. Deutsche Bank National Trust Company*, No. 19-cv-1279-WCB, 2022 U.S. Dist. LEXIS 137655 (D. Del.). *See also* ECF 187, p. 16–17. The Court does not find the issues discussed by the courts in those decisions determinative as to the Court's resolution of the Expert Motion, but it has reviewed, and is familiar with, the facts and holdings of those cases.

[5] *See, e.g., Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

this Order does nothing other than to resolve the specific issues raised by the Expert Motion at this stage of the litigation.[6]

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that the relief requested by the Expert Motion is denied.

cc:
Plaintiff
Plaintiff's Counsel
Defendants
Defendants' Counsel

**END OF ORDER**

---

[6] In addition, the Court notes that this adversary proceeding involves a bench trial and not a jury trial. As at least one court in this circuit has observed,
> Finally, this Court acknowledges that "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs,* 210 F.3d 491, 500 (5th Cir.2000) (cited in *Sunland Constr. Co., Inc. v. City of Myrtle Beach,* 2007 WL 2822509, at *3 (Sept. 26, 2007) (unpublished)). *See also Chicago Title Ins. Co. v. IMG Exeter Assocs. Ltd. P'ship,* 1993 WL 27392, at *4 (4th Cir.1993) (unpublished) ("[T]hese [*Daubert*] concerns are not present in a bench trial where the district court, as the trier of fact, is free to accept or reject the expert's testimony."); *United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir.2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."). Accordingly, "where the factfinder and the gatekeeper are the same, the court does not err in admitting evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *In re Salem,* 465 F.3d 767, 777 (7th Cir.2006). Accordingly, because this case is a bench trial, this Court is in the position to freely accept or reject the experts' testimony at trial without inappropriately usurping its gatekeeping function. Thus, for all of these reasons, this Court must deny the defendants' various motions to strike the experts' testimony at this stage of the case.

*Larosa v. Pecora*, No. CIV.A. 1:07CV78, 2009 WL 3460101, at *3 (N.D.W. Va. Mar. 2, 2009).

5